UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**JACKLYN ARMELIN**                           **CASE NO. 6:21-CV-01980**

**VERSUS**                                    **JUDGE JUNEAU**

**RAINBOW U S A INC ET AL**                   **MAGISTRATE JUDGE PATRICK J. HANNA**

### REPORT AND RECOMMENDATION

Before the Court is a motion to dismiss filed by defendant Savoye Howard ("Howard") and a motion to remand filed by plaintiff Jacklyn Armelin ("Plaintiff"). (Rec. Docs. 22, 27). Both motions are opposed and fully briefed. (Rec. Docs. 25, 26, 29, 30). Plaintiff's opposition to Howard's motion to dismiss also contains an incorporated motion for leave to amend. (Rec. Doc. 25). The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Plaintiff's motion to remand be GRANTED and Howard's motion to dismiss and Plaintiff's incorporated motion to amend be declared MOOT.

### Factual Background

This suit originated in the 16th Judicial District Court for the Parish of Iberia, Louisiana. Plaintiff's petition for damages alleged violations of Louisiana's Employment Discrimination Law (La. R.S. 23: 300, et seq.) and Louisiana's

Whistleblower Statute (La. R.S. 23:967), as well as Louisiana law claims for intentional infliction of emotional distress ("IIED"). (Rec. Doc. 1-1). Plaintiff's petition named her former employer, Rainbow USA, Inc. ("Rainbow") and her former supervisor, Howard, as defendants. (*Id.*).

Plaintiff's suit arises from her employment with Rainbow for approximately three (3) months beginning in June of 2020.[1] (*Id.* at ¶¶ 2, 7). Plaintiff was hired as an assistant store manager at Rainbow's New Iberia store. (*Id.* at ¶ 2). Plaintiff alleges Howard began sexually harassing her shortly after she began working at Rainbow by insisting that Plaintiff drive her home after work, using these occasions to ask Plaintiff personal questions about her sexual orientation and habits. (*Id.* at ¶ 3). Plaintiff asserts that Howard began entreating her to begin a sexual relationship and instructed that Plaintiff must comply if she wished to keep her job. (*Id.* at ¶ 3). Plaintiff claims that she made a complaint regarding Howard's behavior to Rainbow's human resources department on or about September 4, 2020, after which she was fired. (*Id.* at ¶ 7). Plaintiff alleges this outcome was forewarned by Howard in August, when Plaintiff confronted Howard about her behavior and asked her to stop. (*Id.* at ¶ 7).

---

[1] Plaintiff does not allege the actual date of termination of her employment, but Plaintiff's original Petition asserts her attorney contacted Rainbow on or about September 16, 2020 to make the former employer aware of Plaintiff's claims and received no response. Based on these uncontroverted facts, the Court assumes Plaintiff's termination occurred between September 4, 2020 and September 16, 2020. *See*, Rec. Doc. 1-1 at ¶ 11.

Rainbow removed Plaintiff's suit to this forum, alleging subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds the statutory minimum and the parties are diverse in citizenship when the citizenship of Howard is disregarded. Rainbow alleged Howard was improperly joined as a defendant because there is no reasonable possibility that Plaintiff can recover against Howard on the claims stated in her petition. (Rec. Doc. 1).

Plaintiff amended her complaint post removal. (Rec. Doc. 19). Plaintiff's amendment added factual allegations in support of her claims for IIED. Notably, Plaintiff alleged that Howard's campaign of harassment culminated in Plaintiff's acquiescence to a sexual relationship, which she felt forced to participate in to keep her job. Plaintiff further alleged that Howard's actions caused her mental anguish such that she was hospitalized for mental health treatment from September 27 – October 7, 2020 (Rec. Doc. 19). Defendant Howard filed a motion to dismiss, echoing Rainbow's allegations that Plaintiff failed to state viable claims against Howard. (Rec. Doc. 22). Shortly thereafter, Plaintiff filed a motion to remand, asserting a lack of diversity of citizenship among the parties so as to deprive this Court of subject matter jurisdiction. (Rec. Doc. 27). Both pending motions are addressed below.

## Law and Analysis

"Federal courts are courts of limited jurisdiction. Absent jurisdiction conferred by statute, district courts lack power to consider claims."[2] Federal courts have subject-matter jurisdiction only over civil actions presenting a federal question[3] and those in which the amount in controversy exceeds $75,000 exclusive of interest and costs and the parties are citizens of different states.[4] A suit is presumed to lie beyond the scope of federal-court jurisdiction until the party invoking federal-court jurisdiction establishes otherwise.[5] Similarly, any doubts regarding whether removal jurisdiction is proper should be resolved against federal-court jurisdiction.[6] The party invoking the court's subject-matter jurisdiction has the burden of establishing the court's jurisdiction.[7] Thus, when a lawsuit has been removed from state court, as this suit has, the removing party must bear that burden.[8] Accordingly, Rainbow has the burden of establishing that this court has subject-matter jurisdiction over this action. Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[9]

---

[2] *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). See, also, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).
[3] 28 U.S.C. § 1331.
[4] 28 U.S.C. § 1332.
[5] *Kokkonen v. Guardian Life*, 511 U.S. at 377; *Howery v. Allstate*, 243 F.3d at 916.
[6] *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).
[7] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *Gaitor v. Peninsular & Occidental S. S. Co.*, 287 F.2d 252, 253 (5th Cir. 1961).
[8] *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008); *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005).
[9] 28 U.S.C. § 1447(c).

## A. Diversity Jurisdiction

In support of her motion to remand, Plaintiff argues that a lack of diversity among the parties forecloses subject matter jurisdiction in this case. Specifically, Plaintiff asserts that she and defendant Howard are both citizens of Iberia Parish, Louisiana. (Rec. Doc. 27). Natural persons are deemed to be citizens of the state in which they are domiciled.[10] Domicile is based on a combination of a person's residence and their intent to remain there permanently.[11] The parties do not dispute Howard's Louisiana citizenship. (Rec. Docs. 1-1, 29). Having received no evidence contradicting the allegation that both Plaintiff and Howard are citizens of Louisiana, the Court finds this to be the case. The record shows that Rainbow is incorporated in New York state and licensed to do business in Louisiana. (Rec. Doc. 1 at ¶ 2). A corporation is deemed to be a citizen of the state in which it is incorporated and the state in which it maintains its principal place of business.[12] An allegation that a corporation is licensed to do business in a state is not the equivalent of its principal place of business, however, the Court has received no information contradicting Rainbow's assertion of New York citizenship for diversity jurisdiction purposes and the Court will assume that citizenship for purposes of this motion as the analysis hinges on improper joinder of Howard. The parties do not dispute that the amount

---

[10] *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011).
[11] *Id.*
[12] 28 U.S.C. § 1332(c)(1); *MidCap Media Finance, LLC v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019).

in controversy meets or exceeds the statutory minimum of $75,000.00 in this case. (Rec. Docs. 1, 27).

### B. Improper Joinder

Defendants argue, as outlined above, that Howard's citizenship should be disregarded for diversity jurisdiction purposes based on the doctrine of improper joinder. (Rec. Doc. 29). The doctrine of improper joinder is a narrow exception to the complete diversity requirement.[13] The removal statutes "entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'"[14] "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case."[15]

To establish improper joinder, defendants must prove either actual fraud in the pleading of jurisdictional facts, or the plaintiffs' inability to establish a cause of action against the nondiverse party in state court.[16] Here, there is no allegation of actual fraud. Therefore, the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for

---

[13] *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011); *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005).
[14] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).
[15] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d at 573.
[16] *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)).

the district court to predict that the plaintiff might be able to recover against an in-state defendant."[17]

A defendant contending that a nondiverse party is improperly joined has a heavy burden of proof.[18] The court must evaluate the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving contested issues of substantive fact in favor of the plaintiff.[19] The sufficiency of a plaintiff's state-court petition for purposes of the improper joinder analysis is measured under federal pleading standards.[20] Thus, the analysis used to determine whether a defendant is improperly joined is the same as that used to determine whether a claim has been stated under Fed. R. Civ. P. 12(b)(6). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[21]

Under that standard, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[22] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23] "Factual allegations must be enough to raise a right to relief above the speculative level. . . on the assumption

---

[17] *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d at 573 (citing *Travis v. Irby*, 326 F.3d at 648).
[18] *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983).
[19] *Green v. Amerada Hess*, 707 F.2d at 205; *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).
[20] *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016).
[21] *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d at 573.
[22] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7

that all the allegations in the complaint are true (even if doubtful in fact)."[24] As part of this analysis, the court must proceed in two steps. First, the court must separate legal conclusions from well-pleaded facts.[25] Second, the court must review the well-pleaded factual allegations, assume them to be true, and then determine whether they "plausibly give rise to an entitlement of relief."[26] "[A] single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court."[27]

Plaintiff's complaint, as amended, alleges violations of the LEDL and LWS, as well as a claim for intentional infliction of emotional distress. Rainbow admits its removal and subsequent motion to dismiss were based on Plaintiff's original state court Petition, but argues these motions remain pertinent in light of Plaintiff's amended Complaint. Plaintiff's amendment, filed on or about August 20, 2021, alleges additional facts in support of her claims of intentional infliction of emotional distress. (Rec. Doc. 19).

La. R.S. 23:332 makes it unlawful within the State of Louisiana for an employer to discriminate against an employee, *inter alia*, on the basis of sex. An "employer" is defined by the LEDL as

---

[24] *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555.
[25] *Ashcroft v. Iqbal*, 556 U.S. at 678-79.
[26] *Ashcroft v. Iqbal*, 556 U.S. at 679.
[27] *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 (5th Cir. 2004). See, also, *Green v. Amerada Hess Corp.*, 707 F.2d at 208 ("If even one of Green's many claims might be successful, a remand to state court is necessary.").

> a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.  La. R.S. 23:302(A).

Mimicking the prevailing interpretation of federal employment discrimination provisions found in Title VII (42 U.S.C.A. 2000e, *et seq*.), courts interpreting the LEDL uniformly hold that individual co-workers or supervisors are not individually liable under these provisions.[28]  The parties do not dispute Howard's status as Plaintiff's supervisor during the events at issue. (Rec. Docs. 1-1, 22-1).  Plaintiff does not allege facts that contradict Howard's supervisor status, such as that she received services directly from Plaintiff or that Plaintiff's compensation was paid directly by Howard, or, finally, that Howard personally employed twenty (20) or more persons within the State of Louisiana for the requisite time.  Given the foregoing, this Court agrees that Plaintiff fails to state viable claims against defendant Howard under the LEDL in her complaint, as amended.  (Rec. Doc. 19).

The LWS (La. R.S. 23:967) provides, in part:

> [a]n employer shall not take reprisal against an employee who in good faith, and after advising the employer of the

---

[28]   *Hilliard v. Parish*, 991 F. Supp. 2d 769 (E.D. La. 2014).

9

> violation of law ... [o]bjects to or refuses to participate in an employment act or practice that is in violation of law.[29] 'Reprisal' includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.[30]

Just as the case with the LEDL, the LWS does not create a right of action against individual co-workers or supervisors.[31] Given the Court's finding as to Howard's status as a mere supervisor, we also find Plaintiff's purported LWS claims against Howard to be deficient.

Plaintiff's complaint, as amended, asserts a claim against Howard for intentional infliction of emotional distress under Louisiana law. (Rec. Docs. 1-1, 19). Plaintiff alleges Howard undertook an escalating pattern of harassment culminating in one or more coerced sexual encounters and necessitating Plaintiff's hospitalization for mental health issues following her termination.[32]

> In order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the

---

[29] La. R.S. 23:967(A)(3).
[30] La. R.S. 23:967(C)(1).
[31] *Dronet v. LaFarge Corp.*, 2000 WL 1720547, *2 (E.D. La. 2000) citing *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994).
[32] Plaintiff asserts that she was "psychiatrically hospitalized" from September 27 – October 7, 2020 "as a direct result of defendants' outrageous and injurious conduct." (Rec. Doc. 19 at ¶ 10).

10

>defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.[33]

Claims for IIED in the workplace are generally limited to allegations of "deliberate, repeated harassment over a period of time."[34] The distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental suffering or anguish inflicted upon the plaintiff is extreme. Liability can arise only where the actor desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct. The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like.[35] This has been characterized as a sliding scale approach under which even "mild" harassment may become tortious if continued over a substantial time period.[36]

Plaintiff claims Howard engaged in a pattern of behavior that included:

- inquiring into Plaintiff's personal sex life;

---

[33] *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991).
[34] *Id.*
[35] *Id.* citing Restatement (Second) of Torts, § 46, *inter alia*.
[36] *Bustamento v. Tucker*, 607 So.2d 532, 538 (La. 1992).

11

- asking if Plaintiff had sex with women;

- asking if Plaintiff was interested in having sex with women;

- requiring Plaintiff to allow Howard to delete and send inappropriate text messages from Plaintiff's phone in order to cover up Howard's misdeeds;

- coercing Plaintiff into engaging in a sexual relationship with her in order to keep her job; and

- retaliating against Plaintiff when Plaintiff reported Howard's behavior and ceased submitting to Howard's advances. (Rec. Docs. 1-1, 19).

In *Hewitt v. 3G Energy Services, LLC*, a case decided by this court's Shreveport Division in 2019, the court considered whether plaintiff stated a claim for IIED sufficient to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[37] In that case, plaintiff claimed she was subjected to sexual harassment including unwanted touching, persistent questions regarding her personal sexual habits, and comments regarding plaintiff's husband and marriage. The majority of plaintiff's allegations involved unwanted conduct by her supervisor. Contrasting a number of cases in which claims for IIED under Louisiana law were found inadequate by Louisiana state and federal courts, the *Hewitt* court held that plaintiff's claims could possibly support a finding of IIED in her favor. Applying the Rule

---

[37] No. 19-CV-955, 2019 WL 2402963 (W.D. La. 2019).

12

12(b)(6) standard, the court declined to dismiss plaintiff's IIED claim against her supervisor alleged to have spearheaded plaintiff's harassment.

As did the court in *Hewitt*, this Court acknowledges the close call that Plaintiff's IIED allegations present under Louisiana law.[38] The Court finds, however, Plaintiff's allegations before this court involve facts more compelling than those considered in *Hewitt*. Plaintiff asserts she was the victim of what amounts to quid pro quo sexual harassment and retaliatory discharge. Plaintiff also alleges a demonstrable impact on her mental health as a result of Howard's alleged harassment. We find Plaintiff's allegations sufficient to withstand defendants' Rule 12(b)(6) challenge but express no opinion regarding the future success of any such claim. Based on these findings, Plaintiff has stated a claim for IIED against Howard, such that the Court will not disregard Howard's Louisiana citizenship for diversity jurisdiction purposes. Accordingly, the parties are not completely diverse and remand is required.[39]

**C. Motion to Dismiss**

---

[38] *Id.* at *7.
[39] 28 U.S.C. § 1332.

Given the foregoing analysis, Howard's motion to dismiss will not be considered by this Court, in keeping with the jurisdictional finding.[40] The motion is therefore moot.

### D. Motion to Amend

In her brief in opposition to Howard's motion to dismiss, Plaintiff asks for leave to amend her complaint if the Court finds it insufficient. (Rec. Doc. 25 at pp. 5-6). Although incorporated in the briefs filed regarding the motion to dismiss, the Court views this as a separate motion for relief. Based on our finding that this Court lacks subject matter jurisdiction over Plaintiff's claims, the Court finds the motion to be moot.[41]

### Conclusion

For the reasons discussed herein, this Court recommends that Plaintiff's motion for remand (Rec. Doc. 27) be GRANTED; that defendant Howard's motion to dismiss (Rec. Doc. 27) be declared MOOT; and that Plaintiff's incorporated motion to amend (Rec. Doc. 25) similarly be declared MOOT. Accordingly, this Court further recommends that Plaintiff's suit be REMANDED to the 16th Judicial District Court for the Parish of Iberia for further proceedings based on this Court's lack of subject matter jurisdiction.

---

[40] *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 231-32 (5th Cir. 2012) (collecting cases affirming a district court's duty to refrain from addressing the merits of any matter over which it is not assured it possesses subject matter jurisdiction).

[41] *Id.*

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 3rd day of January, 2022.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE